Filed 8/3/16  P. v. Phim CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>VIRET PHIM,<br><br>　　Defendant and Appellant. | F069104<br><br>(Super. Ct. No. 25626)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Valli K. Israels, Judge.

Michael Satris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, R. Todd Marshall and A. Kay Lauterbach, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### *INTRODUCTION*

In 1994, appellant Viret Phim, a 17-year-old gang member from Stockton, shot and killed two of his own confederates while they were participating in the robbery of a 14-year-old girl outside a market in Modesto.

Appellant was subsequently convicted of two counts of first degree murder, with robbery and multiple-murder special circumstances, under a theory of felony murder, as well as other offenses. The trial court sentenced him to two terms of life without the possibility of parole (LWOP) for the murders, staying the second LWOP term. This court affirmed appellant's convictions in 1997. (*People v. Phim* (Nov. 20, 1997, F025275) [nonpub. opn.].)

On April 8, 2013, appellant filed a petition for writ of habeas corpus in which he claimed he was entitled to resentencing on both statutory grounds pursuant to Penal Code[1] section 1170, subdivision (d)(2) (hereafter § 1170(d)(2)), and on federal constitutional grounds pursuant to *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*).

On June 14, 2013, the trial court issued written orders denying, without prejudice, appellant's petition for writ of habeas corpus with respect to his *Miller*-based constitutional claims, and setting the matter for hearing solely as a petition for recall and resentencing pursuant to section 1170(d)(2).

After a hearing on February 28, 2014, the trial court denied the petition for recall and resentencing, essentially concluding that, although appellant had made commendable progress in his postconviction rehabilitation efforts in prison, he had not demonstrated sufficient progress to justify resentencing under the factors enumerated in section 1170(d)(2).

On appeal, appellant contends the trial court abused its discretion in determining that he was not entitled to resentencing under section 1170(d)(2). Among other things, he argues that the court abused its discretion by failing to consider the juvenile LWOP sentencing considerations established by *Miller* (the so-called "*Miller* factors").

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Based on the unique circumstances of this case, we conclude that the order appealed from should be reversed and the matter remanded for the trial court to reconsider appellant's original petition for writ of habeas corpus *in its entirety*, including appellant's constitutional claims, in light of the authorities discussed, *infra*.

## *DISCUSSION*

**Governing Law**

In *Miller*, the United States Supreme Court held that statutes requiring courts to sentence juvenile homicide offenders to LWOP violated the Eighth Amendment ban on cruel and unusual punishments. (*Miller*, *supra*, 567 U.S. at pp. ___, ___ [132 S.Ct. at pp. 2469, 2475].) The high court explained that its other recent precedents concerning juvenile sentencing, *Roper v. Simmons* (2005) 543 U.S. 551 and *Graham v. Florida* (2010) 560 U.S. 48, along with its "individualized sentencing decisions[,] make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2475].) In other words, "a sentencer misses too much if he treats every child as an adult." (*Id.* at p. ___ [132 S.Ct. at p. 2468].)

The Court accordingly set forth five considerations—the above mentioned "*Miller* factors"—that sentencing courts need to evaluate before sentencing a juvenile homicide offender to LWOP: (1) "his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) "that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea

agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation." (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2468].)

The *Miller* Court made clear that it was not foreclosing "a sentencer's ability" to conclude that LWOP was an appropriate sentence for a particular juvenile homicide offender. (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2469].) Instead, it explicitly stated that its ruling "mandates only that a sentencer follow a certain process— considering an offender's youth and attendant characteristics—before imposing a particular penalty" (*id.* at p. ___ [132 S.Ct. at p. 2471]), such that sentencing courts going forward were obligated "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison" before imposing LWOP sentences (*id.* at p. ___ [132 S.Ct. at p. 2469]).

In *Montgomery v. Louisiana* (2016) ___U.S. ___ [136 S.Ct. 718, 736], the Court held that *Miller* applies retroactively to offenders like appellant, whose LWOP sentences became final before *Miller* was decided.

The pertinent statute governing sentencing of juvenile offenders remains section 190.5. Subdivision (b) of that statute provides that "[t]he penalty for a defendant found guilty of murder in the first degree, in any case in which one or more special circumstances enumerated in Section 190.2 or 190.25 has been found to be true under Section 190.4, who was 16 years of age or older and under the age of 18 years at the time of the commission of the crime, shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life."

In *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388–1389 (*Gutierrez*), which, as noted by the trial court, was pending review at the time of the hearing on appellant's resentencing petition, the California Supreme Court applied *Miller* to disapprove *People v. Guinn* (1994) 28 Cal.App.4th 1130 [33 Cal.Rptr.2d 791] (*Guinn*), which had held that section 190.5, subdivision (b) created a presumption in favor of LWOP for those

sentenced under its provisions.  In *Gutierrez*, our high court summarized its holding and disposition as follows:

> "[W]e hold that section 190.5[, subdivision] (b), properly construed, confers discretion on a trial court to sentence a 16- or 17-year-old juvenile convicted of special circumstance murder to life without parole or to 25 years to life, with no presumption in favor of life without parole. We further hold that *Miller* requires a trial court, in exercising its sentencing discretion, to consider the 'distinctive attributes of youth' and how those attributes 'diminish the penological justifications for imposing the harshest sentences on juvenile offenders' before imposing life without parole on a juvenile offender.  (*Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2465].) Because the sentencing regime created by section 190.5[, subdivision] (b) authorizes and indeed requires consideration of the distinctive attributes of youth highlighted in *Miller*, we find no constitutional infirmity with section 190.5[, subdivision] (b) once it is understood not to impose a presumption in favor of life without parole.
>
> "Because the two defendants here were sentenced before *Miller* in accordance with the interpretation of section 190.5[, subdivision] (b) prevailing at the time (see *Guinn*, *supra*, 28 Cal.App.4th at p. 1142), we remand for resentencing in light of the principles set forth in *Miller* and this opinion."  (*Gutierrez*, *supra*, 58 Cal.4th at pp. 1360–1361.)

The court thus interpreted *Miller* as requiring a court "to admit and consider relevant evidence of" the five *Miller* factors.  (*Gutierrez*, at p. 1388.)

Although a court must consider the *Miller* factors and all relevant evidence pertinent to them prior to sentencing a juvenile offender to LWOP or declining to resentence him or her to a determinate sentence, "[n]o particular factor, relevant to the decision whether to impose LWOP on a juvenile who has committed murder, predominates under the law."  (*People v. Palafox* (2014) 231 Cal.App.4th 68, 73.) "Hence, as long as a trial court gives due consideration to an offender's youth and attendant characteristics, … it may, in exercising its discretion under Penal Code section 190.5, subdivision (b), give such weight to the relevant factors as it reasonably determines is appropriate under all the circumstances of the case."  (*Ibid.*)

5.

**Analysis**

Here, it is undisputed that the trial court did not consider the *Miller* factors in determining whether appellant was entitled to recall of his LWOP sentence and resentencing under section 1170 (d)(2). The attorney general argues the court's failure to consider the *Miller* factors does not demonstrate an abuse of discretion because the court was only "obliged to consider the factors set forth in the statute" and notes "[y]outh [was] not one of those factors."

It is true that prior to the hearing on appellant's petition in February 2014, the trial court limited the scope of the hearing to the question of whether appellant was entitled to resentencing under the factors enumerated in section 1170(d)(2), by denying, without prejudice, appellant's habeas petition with respect to his *Miller*-based constitutional challenges to his LWOP sentence. However, it appears the court's reason for so limiting the scope of the hearing was erroneous.

The trial court's June 2013 written order reflects that the reason the court declined to reach appellant's constitutional claims was because it mistakenly believed that appellant had already raised "unsuccessfully on appeal" the contention that his LWOP sentence under section 190.5, subdivision (b), "constitutes cruel and unusual punishment under the Eighth Amendment because he was a minor at the time he committed the offense." However, our 1997 opinion upholding the judgment of conviction reflects that, although appellant claimed his sentence constituted cruel and unusual punishment under the state Constitution, he did not challenge his LWOP sentence under the Eighth Amendment of the federal Constitution.

The trial court's reason for declining to reach appellant's constitutional claims on the merits thus appears to have been mistaken and there was no reason for the court to limit the scope of the hearing to the question of statutory relief as it did. In light of this and the number of decisions concerning the LWOP sentencing of juveniles rendered by the United States and California Supreme Courts since the court heard appellant's

6.

petition, including while this case has been pending on appeal, we believe the most appropriate remedy is to remand the matter for the court to hold a new hearing to reconsider, in its entirety, appellant's original petition for writ of habeas corpus in light of the authorities discussed above and any other pertinent decisions that may have been rendered by the time the court reconsiders appellant's petition.

## *DISPOSITION*

The order appealed from is reversed and the matter is remanded to the trial court with directions to reconsider appellant's original April 8, 2013, petition for writ of habeas corpus in its entirety in light of the views expressed and authorities discussed in this opinion.

_____

HILL, P.J.

WE CONCUR:

_____

GOMES, J.

_____

KANE, J.